## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

BENJAMIN COX a/k/a ABDUL MUJID,  :

          Petitioner,  :

          v.  :

CHARLES E. WARREN, JR., et al.,  :

          Respondents.  :

Civil Action No. 11-7132 (FSH)

**OPINION**

---

**HOCHBERG**, District Judge:

Petitioner Benjamin Cox ("Petitioner") filed a Petition for a Writ of Habeas Corpus,

pursuant to 28 U.S.C. § 2254(a), challenging a judgment of conviction entered by the Superior

Court of New Jersey.  See Docket Entry No. 1.  This Court advised Petitioner of his rights under

Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and – upon receipt of Respondents' limited

answer conceding both timeliness and due exhaustion of Petitioner's challenges – directed an

answer on the merits.  See Docket Entries Nos. 2, 7 and 15.  Respondents duly complied, and

Petitioner traversed.  See Docket Entries Nos. 17 to 20.

## I. BACKGROUND

Petitioner was convicted of murder and possession of a weapon for unlawful purposes.

See State v. Cox,  2007 WL 1773188, at *1 (N.J. Super. Ct. App. Div. June 21, 2007).  The state

courts described the events underlying these charges and Petitioner's conviction as follows:

> [T]his matter arises out of the shooting death of Reginald Coley, known by his
> street name as "Rahdo."  Several hours after he had an altercation with Coley,
> [Petitioner] returned to Rosa Parks Boulevard, walked up to a vacant lot with his

right hand covered in a white towel, and fired three shots [at Coley while Coley was trying to run away]. Two of the shots struck Coley['s liver and kidney], causing him to bleed to death. Purvis King, a . . . cousin of Coley, saw [Petitioner] . . . extend[ing] his right hand toward Coley. [King] heard three shots [and] ran into the liquor store where Coley had collapsed and told police officers that "Mojigg" ([Petitioner's] street name) shot [Coley]. King identified [Petitioner] . . . and gave a statement. [Petitioner] was arrested on June 23, 2001, . . . on other charges, and officers from the Paterson Police Department went to Wallington to interview him. [Petitioner] was read his Miranda rights and, without being asked a question, stated: "You guys probably think I killed that guy [Coley]. What was I supposed to do, let him stomp a hole in my head?"

Id. [1]

    Petitioner was tried to a jury and found guilty on the above-mentioned charges but acquitted on another weapon-related offense. See id. His conviction was affirmed on direct appeal (albeit his matter was remanded for re-sentencing under then-recent state precedent, State v. Natale, 184 N.J. 458 (2005)), and the Supreme Court of New Jersey denied certification. See id.; see also State v. Cox, 192 N.J. 479 (2007). Petitioner then sought post-conviction relief ("PCR"). The Law Division denied him PCR; said denial was affirmed by the Appellate Division, and the Supreme Court of New Jersey again denied certification. See Docket Entry No. 7-2, at 21-35; see also State v. Cox, 2011 WL 831716 (N.J. Super. Ct. App. Div. Mar. 11, 2011).

---

[1] About two hours prior to the shooting, Coley and Petitioner had an argument while being in Petitioner's vehicle. Upset by the argument, Petitioner punched Coley in the head, causing Coley to exit the car and throw a rock at the vehicle, breaking one of the windows. Four eyewitnesses testified to the facts indicating that Petitioner fired shots at Coley, causing Coley's death, although King was the State's main witness since he also testified to the developments right prior to and after the shooting and expressly identified Petitioner, whom King knew from prior interractions.

The within Petition followed. Petitioner raised three umbrella Grounds, one of which consumed fourteen pages[2] and another incorporated six different sub-grounds which, effectively, were grounds on their own. See Docket Entry No. 1, at 7-47.

## II.    STANDARD OF REVIEW

The general standard of federal habeas review is long-established, and it sets forth a narrowly-tailored test. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) ("As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner"). Section 2254(a) permits a federal court to entertain only claims alleging that a person is held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In addition, when a state court has adjudicated a petitioner's federal claim on the merits, a district court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" Parker v. Matthews, 132 S. Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).[3]

_____

[2] Ground Two raised challenges to assistance of counsel Petitioner received during his trial and direct appeal; the Court distilled over a dozen different claims conflated in that Ground.

[3] Consequently, the starting point of federal habeas review under § 2254(d)(1) analysis is to determine the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). A decision is "contrary to" a Supreme Court holding, within the meaning of 28 U.S.C. § 2254(d)(1), if: (a) the state court outright "contradicts the governing law set forth in [Supreme Court] cases"; or (b) the state court "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct

3

## III.    DISCUSSION

### A.    <u>Ground One</u>

In his Ground One, Petitioner alleged that his "trial court erred in failing to instruct the jury as to the lesser included offenses of . . . aggravated and reckless manslaughter."[4]  Docket Entry No. 1, at 7.  In support of his contention, Petitioner relies on <u>State v. Jenkins</u>, a New Jersey decision.  See <u>id.</u>; <u>see</u> also <u>State v. Jenkins</u>, 178 N.J. 347 (2004).

In <u>Beck v. Alabama</u>, 447 U.S. 625, 638 (1980), the United States Supreme Court determined that defendants in a *capital* case possess a constitutional right to have the jury instructed on a lesser included offense.  See <u>also</u> <u>Kontakis v. Beyer</u>, 19 F.3d 110, 119 (3d Cir. N.J. 1994) ("In <u>Beck</u>, the Supreme Court held that in a *capital* case the trial court committed constitutional error when it would not charge on a lesser-included offense for which the evidence supported a conviction") (emphasis supplied).  In a footnote, the Supreme Court expressly reserved judgment on "whether the Due Process Clause would require the giving of such instructions in a non-capital case."  <u>Beck</u>, 447 U.S. at 638 n.7.

_____

governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  <u>Williams</u>, 529 U.S. at 413.  Notably, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law."  <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011) (quoting <u>Williams</u>, 529 U.S. at 410).  Correspondingly, the standard posed by federal habeas review "is a difficult to meet, [since it is a] highly deferential standard for evaluating state-court rulings, [and that standard] demands that state-court decisions be given the benefit of the doubt."  <u>Cullen</u>, 131 S. Ct. at 1398 (citations and internal quotation marks omitted).

[4]  Since Petitioner's original position was limited to misidentification, <u>i.e.</u>, to the claim that Petitioner was not the person who killed Coley, Petitioner's claim that his counsel erred in pursuing an "all or nothing" theory of the case, as well as Petitioner's now-assumed position that, "[h]ad manslaughter been charged, . . . the jury would not have rendered a verdict of murder [and, instead, would duly find him guilty of manslaughter]," Docket Entry No. 1, at 19, is facially incongruent with his original position.

Since then, the courts have consistently held that a petitioner fails to establish an unreasonable application of clearly established federal law where the petitioner asserts a violation of his due process rights on the basis of the court's election not to instruct the jury on lesser included offenses.  See Wanger v. Hayman, 2011 U.S. Dist. LEXIS 1305 (D.N.J. Jan. 3, 2011) (collecting cases and finding that habeas relief could not be granted where petitioner failed to assert a due process violation recognized by the Supreme Court); accord Urcinoli v. Cathel, 2010 U.S. Dist. LEXIS 133733, at *49 (D.N.J. Dec. 17, 2010) ("[B]ecause Petitioner did not face the death penalty, Supreme Court precedent did not require the instruction on the lesser included offenses of manslaughter"); Peoples v. Cathel, 2006 U.S. Dist. LEXIS 89304 (D.N.J. Nov. 21, 2006) (same).[5]

Furthermore, Petitioner's reliance on Jenkins is misplaced since: (a) Jenkins is a state law, and errors in application of state law are not cognizable in federal habeas review, see, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68(1991)); see also Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (State court evidentiary rulings cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental"); accord Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010); and (b) even under the New Jersey law, a trial court is obligated to instruct the jurors on a lesser-

_____

[5] Cf. Mustaffa v. Ricci, 2011 U.S. Dist. LEXIS 44940 (D.N.J. Apr. 25, 2011) ("To the degree Petitioner asserts that the . . . charge [given] prevented the jury from considering Petitioner's 'imperfect self-defense,' Petitioner's position is divorced from law of Petitioner's conviction, since Petitioner could, just as well, present his 'imperfect self-defense' for the purposes of . . . charge [given]") (citing State v. Pitts, 116 N.J. 580 (1989)).

included offense only when the evidence "clearly indicate[s] that a jury could convict on the lesser while acquitting on the greater offense," Jenkins, 178 N.J. at 361, i.e., in a scenario absent in Petitioner's circumstances. Therefore, Petitioner's Ground One does not merit habeas relief.

**B.    Ground Two**

Petitioner's fourteen-page-long Ground Two attacks the performance of his trial, PCR and, perhaps, appellate counsel.

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI; see also Strickland v. Washington, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. See Strickland, 466 U.S. at 687.

First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.[6] The court must then determine whether, in light of all the circumstances at the time, the identified errors were so egregious that they were outside the wide range of professionally competent assistance.[7] See id.

---

[6] See also, Strickland, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy"); Thomas v. Varner, 428 F. 3d 491, 499 (3d Cir. 2005) ("To overcome the Strickland presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy").

[7] Cf. Kates v. Moore, 2009 U.S. Dist. LEXIS 77000, at *89 (D.N.J. Aug. 27, 2009) ("it is entirely proper [for the court sitting in habeas review] to engage in record-based speculation as to what counsel's strategy might have been" for the purposes of examining the "petitioner's attempt

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. As the Supreme Court explained,

> [i]n making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.[8]

The Strickland test applies to the performances of both trial and appellate counsel. See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004). When the issue is appellate counsel's failure to raise specific issues, a petitioner satisfies the first Strickland prong by showing that appellate counsel was "objectively unreasonable [i.e.,] that counsel unreasonably failed to discover [arguably] nonfrivolous issues and to file a merits brief raising them." Smith v. Robbins, 528 U.S. 259, 285 (2000). An arguably nonfrivolous issue is "one that counsel can argue in good faith with some potential for prevailing." Id. Consequently, the general principle

_____

to disprove the existence of a possible sound strategy") (quoting Thomas v. Varner, 428 F.3d at 500 n.8).

   [8] The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

established by <u>Smith</u> is that appellate counsel need not raise every non-frivolous issue on appeal; he "may select from among them in order to maximize the likelihood of success on appeal." <u>Id.</u> at 288; <u>see</u> <u>also</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 750 (1983) (rejecting "<u>per</u> <u>se</u> rule that appellate counsel must raise every nonfrivolous issue").

Here, Petitioner's fourteen-page-long Ground Two raised a panoply of challenges frequently implicating the aforesaid test and, on occasion, omitting to connect Petitioner's claims to performance of his counsel. To the degree feasible, the Court has addressed these claims <u>seriatim</u>.

Following a lengthy prelude, Petitioner's Ground Two begins with the claim that his trial counsel violated his rights "in accepting the jury selected and failing to use all peremptory challenges [in order to enhance the number of African-Americans impaneled]." Docket Entry No. 1, at 27. While Petitioner might have preferred to have more African-Americans on his jury, "[t]he goal of the Sixth Amendment [right to trial by an impartial jury] is 'jury impartiality with respect to both contestants,'" <u>Georgia v. McCollum</u>, 505 U.S. 42, 58 (1992) (quoting <u>Holland v. Illinois</u>, 493 U.S. 474, 483 (1990)), rather than providing the criminal defendant with the maximum number of jurors of his/her preferred race. Indeed, the Equal Protection Clause outright "*prohibits* criminal defendants from exercising their peremptory strikes in a racially discriminatory manner." <u>Moore v. Hendricks</u>, 2006 U.S. Dist. LEXIS 33901 (D.N.J. May 25, 2006) (emphasis supplied). Thus, Petitioner cannot establish any prejudice from trial counsel's failure to exercise his peremptory strikes in a prohibited, racially discriminatory manner.

> The Equal Protection Clause of the Fourteenth Amendment requires the eradication of "racial discrimination in the procedures used to select the venire from which individual jurors are drawn." <u>Batson v. Kentucky</u>, 476 U.S. 79, 86

(1986). The Sixth Amendment requires that jurors be drawn from pools that represent a "fair cross-section" of the community. . . . The requirements a party must meet when challenging the jury selection process as being racially discriminatory are comparable under equal protection and fair cross-section analysis. To prove either claim, a defendant must first identify a constitutionally cognizable group, that is, a group capable of being singled out for discriminatory treatment. . . . Second, . . . the defendant must show that the procedure which is being used to select the jurors is "susceptible of abuse or is not racially neutral."

Ramseur v. Beyer, 983 F.2d 1215, 1230-31 (3d Cir. 1992), cert. denied, 508 U.S. 947 (1993).

Here, Petitioner has made only a bare allegation that African-Americans were underrepresented on his jury. He has failed to present any evidence of either a Sixth Amendment or Equal Protection violation in the composition of the jury pool; all he offered this Court – and the state courts – were his factless bare assertions. Thus, he has not established any prejudice based upon trial counsel's failure to further challenge the composition of the jury pool or to exercise the remaining peremptory challenges. Correspondingly, his first sub-ground of Petitioner's Ground Two merits no habeas relief.

In his next sub-ground, Petitioner asserts that his "[c]ounsel was ineffective in failing to conduct an adequate legal investigation in regards to the subpoening of Theresa Perry's minor son as to the hearsay of his she was permitted to testify about." Docket Entry No. 1, at 29.

The meaning of the phrase "failing to conduct an adequate legal investigation in regards to the subpoenaing" is not entirely clear to this Court. However, since Petitioner is obligated to duly exhaust his claims before the state courts, and – during his PCR proceedings – Petitioner alleged that his counsel violated his rights by not subpoenaing a certain Naheem Perry, the Court presumes that Petitioner's sub-ground two of Ground Two raised the same claim.

At the time when Coley was killed, Naheem was fifteen years old, and he identified Coley's shooter as "an old black man." Petitioner, who was forty-two at the time of Coley's murder, maintained that he was too young to be identified as an "old man" and, thus, introduction of Naheem's statement into the record might have lent support to Petitioner's case.

However, as Respondents correctly pointed out, Naheem's statement was entered into the record, being deemed an excited utterance exception to the hearsay rule, when Naheem's mother testified. And, as the PCR judge properly observed, a 42-year-old man might indeed appear as an "old" man to a 15-year-old boy. Finally, the Court agrees with Respondents' observation that, "had trial counsel subpoenaed Nyheem, and had Nyheem pointed to [P]etitioner in the jury's presence and testified[,] 'That's the old black man who shot Rahdo,'" Docket Entry No. 17, at 19, Petitioner's defense position would have been deeply compromised. Therefore, in light of the developments that took place during Petitioner's trial, this Court cannot find Petitioner's trial counsel's strategic choice to omit subpoenaing Naheem as Petitioner's witness a violation of Petitioner's rights, as defined in the first prong of <u>Strickland</u>. <u>See</u> <u>Thomas</u>, 428 F. 3d at 499. Hence, the second sub-ground of Ground Two also fails to warrant habeas relief.

Petitioner's third sub-ground of Ground Two repeats and paraphrases his Ground One, asserting that Petitioner's trial court erred by not charging the jury with lesser-included offenses and his trial counsel violated Petitioner's rights by not seeking such instructions and not presenting some unspecified "evidence" in support of such instructions. However, as the Court already detailed, Petitioner's trial judge did not violate Petitioner's rights by omitting to provide such instructions. Analogously, Petitioner's counsel did not violate Petitioner's rights by omitting to seek such instructions since, granted lack of evidentiary support, the counsel's

decision was a sound strategy and did not prejudice Petitioner within the meaning of both

Strickland prongs. Finally, Petitioner's barren reference to some unspecified evidence (that

Petitioner would have wished his counsel to locate in order to exculpate Petitioner) cannot

salvage Petitioner's position.

> Petitioner's next argument is that [his defense counsel's] performance was deficient because [the defense counsel] failed to locate and present [certain evidence.] Petitioner speculates that [such evidence] might have [supported his case] and he deduces from that speculation that [his defense counsel']s failure to locate [such evidence] and investigate [it] was an act of ineffective assistance within the meaning of the Strickland standard. In . . . Rolan v. Vaughn, 445 F.3d 671 (3d Cir. 2006). . . . [the Court of Appeals] underscores two key principles governing this type of inquiry: (a) counsel is not obligated to chase after the wind (e.g., by striving to locate [long-shot evidence]) in hopes of stumbling upon a [piece of evidence that] might turn out favorable; and (b) habeas relief may be warranted only upon the petitioner's showing that [such evidence was] so favorable to the petitioner that lack thereof resulted in prejudice to the petitioner's case within the meaning of the second prong of Strickland. See Strickland, 466 U.S. at 690-91; see also Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); accord Lewis v. Mazurkiewicz, 915 F.2d 106 (3d Cir. 1990) (expressly adopting Strickland and Kimmelman rationale for the purposes of failure-to-investigate analysis).

Echols v. Ricci, 2011 U.S. Dist. LEXIS 93833, at *98-102 (D.N.J. Aug. 19, 2011), aff'd, 2012

U.S. App. LEXIS 14803 (3d Cir. July 19, 2012) (quoting Strickland, 466 U.S. at 691, for the

observation that "counsel has a duty to make [only] reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary"); accord Docket Entry No.

7-2, at 29 (presenting the Appellate Division's reflection on the record in Petitioner's case:

"[T]here are no witnesses identified from those in the crowd who averred [Petitioner] was not the

shooter"). Correspondingly, the third sub-ground of Petitioner's Ground Two does not warrant

habeas relief.

Petitioner's fourth sub-ground of Ground Two asserts that trial counsel was ineffective because the counsel elected not to call an expert witness with regard to the 9mm ammunition clip recovered from his Petitioner. While there is no dispute that a 9mm casing was recovered from the scene of Coley's murder, Petitioner maintains that an expert witness' testimony might have somehow "positively excluded [the ammunition clip from] the ammunition [that] killed [Coley]." Docket Entry No. 1, at 29. However, the prosecution never asserted that the clip was necessarily from one of the bullets fired during the murder; rather, the State's position was limited to the identical calibration of the casing found at the scene of the crime and the chip recovered from Petitioner's person.[9] Therefore, the defense counsel's election not to call an expert witness with regard to the issue not amenable to being affected by an expert testimony was not a violation of either prong of Strickland. Hence, Petitioner's fourth sub-ground of Ground Two does not warrant habeas relief.[10]

Petitioner's fifth sub-ground of Ground Two alleged that his trial "[c]ounsel failed to identify by cross-examining the State witnesses as to identities of various [unspecified but, in Petitioner's opinion] germane persons alluded to, to obtain their identities and interview them to ascertain if they had exculpatory evidence." Docket Entry No. 1, at 29. This somewhat puzzling statement is followed by two phrases: "Identity of treating physician of [P]etitioner" and

---

[9] As the state court properly observed, "[Petitioner] does not even identify a possible expert let alone substantiate his claims that his clip 'did not match.'"

[10] In addition, Petitioner asserts that his counsel should have called an expert to establish that Petitioner "was high on crack-cocaine and 'acid'" and violated Petitioner's rights by not calling such expert. Docket Entry No. 1, at 33. However, since Petitioner maintained that he was not the person who shot Coley and that he had nothing to do with Coley's murder, Petitioner's use of drugs, even if such took place, was inapposite to the issues tried.

"Identities of persons present at crime scene [but] referred to by slang," i.e., by their street aliases rather than actual names.  Id.

To the extent Petitioner wishes to assert that his counsel violated his rights by failing to interview the State's witnesses prior to trial, Petitioner's position is without merit, since his counsel was without a right to conduct such interviews.[11]  See Downer v. Warren, 2013 U.S. Dist. LEXIS 67592, at *58-60 (D.N.J. May 13, 2013) (extensively discussing lack of constitutional or statutory right to pretrial disclosure of even such a thing as the State's witness list").

To the extent Petitioner asserts that his counsel violated his rights by insufficient cross-examination of the State's witnesses during the trial, Petitioner failed to assert the necessary factual predicate, see Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c) (a petition must "state the facts supporting each ground"); see also McFarland v. Scott, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements"), and the Court's own review of the record at bar failed to locate any insufficiencies.  Moreover, Petitioner's counsel did not need to cross-examine or interview any State's witnesses in order to identify Petitioner's physician.[12]  In the same vein, the counsel's

---

[11]  To the extent Petitioner's claim wished to implicate Brady v. Maryland, 373 U.S. 83 (1963), his claims had to be based on the specific exculpatory evidence the prosecutors failed to turn over to the defense.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("Brady did not create [a discovery right for criminal defendants, since] 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded") (quoting Wardius v. Oregon, 412 U.S. 470, 474 (1973)).

[12]  Petitioner "never placed his competence at issue because [he merely asserted he was a drug user and] he denied he was present [at the scene of the crime] and asserted mistaken identity as a defense."  Docket Entry No. 7-2, at 30.

election to avoid inquiries into actual names of the persons mentioned by the witnesses did not prejudice Petitioner, and it was a strategic choice on the counsel's part that cannot be second-guessed by this Court. Thus, Petitioner's fifth sub-ground of Ground Two does not warrant habeas relief.

Petitioner's sixth sub-ground consists of two sub-sub-grounds, one of which includes, in turn, two distinct grounds. See Docket Entry No. 1, at 30-31. Two of these mushrooming claims are reduced to a factless conclusory statement, i.e., that Petitioner's counsel "failed to perform appropriate investigation" and that "[c]ounsel deprived . . . [P]etitioner of effective assistance during [the] trial." These factless, self-serving bold conclusions are deficient procedurally under Habeas Rule 2(c) and, in addition, invalid substantively, for the reasons detailed supra.

The remainder of Petitioner's sub-ground six of Ground Two asserts: (a) failure to move for a mistrial;[13] (b) failure to request a charge required by state law, State v. Kociolek, 23 N.J. 400 (1957); and (c) failure to move to strike a certain part of a witness' testimony and failure to seek curative instructions after a motion for mistrial was denied. See Docket Entry No. 7-1, at 29-30.

---

[13] Underlying this claim is a brief exchange that took place between a prosecutor and the trial judge's law clerk. The exchange occurred in the presence of one of the jurors, when the three were sharing an elevator ride. The law clerk teased by recommending the prosecutor to obtain a copy of a video, "Excitable Boy," and accompanied that recommendation by a phrase, "it seems like an awful lot for a smashed windshield." The prosecutor did not reply, and no further exchange took place. The incident was brought to the attention of the trial judge, and a swift investigation followed during which the juror was voir dired in the judge's chambers and averred that she did not hear the remark being on her cell phone during the entire elevator ride. Petitioner, however, alleged that the juror had lied and his defense counsel should have moved for mistrial on the basis of that exchange. See, generally, Docket Entries 19-24 and 19-27.

In Moore v. Morton, the Court of Appeals reflected on Supreme Court precedent and held that a mistrial was unwarranted where "no remark or argument by the government . . . so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." 255 F.3d 95, 105 (3d Cir. 2001) (internal quotations omitted); see also United States v. De Rosa, 548 F.2d 464 (3d Cir. 1977).[14] Here, no factual aspect of the underlying incident suggests that the prosecutor's listening, silently, to the law clerk's remark could have injected fundamental unfairness into the trial, even if the juror had actually heard it. A fortiori, no fundamental unfairness could have been injected in the event the juror had not heard the remark.[15]

Since a motion for mistrial would be fruitless, Petitioner's counsel did not violate his rights, within either prong of Strickland, by electing not to make such a motion. Therefore, this sub-sub-ground of Petitioner's sub-ground six of Ground Two merits no habeas relief.

---

[14] A mistrial inquiry is that into whether one was denied "fundamental fairness." See Glenn v. Wynder, 2012 U.S. Dist. LEXIS 133821, at *33 (W.D. Pa. Sept. 19, 2012) (relying on Riggins v. Nevada, 504 U.S. 127, 149 (1992), and Lisenba v. California, 314 U.S. 219, 236 (1941)).

[15] The Petition at bar states, somewhat cryptically, that Petitioner's mistrial challenge is based on "a juror state[ment of the juror's] acceptance of the prosecutor's opening statement as to the motive for the shooting." Docket Entry No. 1, at 29. That assertion appears different from the one raised during Petitioner's PCR proceedings when Petitioner contested the statement made by the law clerk to the prosecutor in the juror's presence. However, even if this Court were to refocus its attention on the scenario vaguely suggested by Petitioner's statement, such change in focus would not alter the outcome of the Court's analysis, since: (a) no statement in the Petition suggests that the prosecutor's utterances violated Petitioner's rights; and (b) the record is filled with the judge's instructions directing the jurors to reach their conclusions solely on the basis of evidence presented and not on the content of opening or closing statements made by counsel on both sides. If a certain juror, after a proper deliberation, arrives at the conclusions corresponding to the sentiment expressed by the prosecutor in the opening statement (or even if that juror fails to head the judicial instructions), that fact does not violate federal rights of a criminal defendant.

Petitioner's sub-sub-ground based on Kociolek is facially meritless.  First, as detailed supra, errors in application of state law are not cognizable in federal habeas review.  Second, the record shows that a Kociolek-like charge was given to Petitioner's jurors a number of times when the trial judge advised the jury to be wary of the oral statements attributed to Petitioner by law enforcement witnesses.[16]  Hence, Petitioner's trial counsel's election not to seek another repeat of the Kociolek charge did not violate either prong of Strickland.  Correspondingly, this sub-sub-ground of Petitioner's sub-ground six of Ground Two merits no habeas relief.

The third sub-sub-ground asserts that Petitioner's counsel violated his rights by not moving to strike an outburst of King (the cousin of Coley who witnessed Petitioner raising his arm toward Coley and firing three shots) or, in alternative, by not seeking curative instructions after Petitioner's counsel's motion for mistrial (based on that outburst) was denied.[17]

---

[16]  See, generally, Docket Entries Nos. 19-11 to 14 (reflecting the trial judge's systemic reminders to the jury that it was the jurors' function to determine whether or not each oral statement attributed to Petitioner was actually made by Petitioner, and if made, whether that statement or any portion of it was credible).

[17]  Specifically, without a question being posed, King stated, "That man killed – he killed [Coley].  He killed him.  I saw it with my own eyes."  In response, King was told by Petitioner's counsel (who was trying to capitalize on King's original statement that he only heard the shots but did not see them), "Well, no, you didn't."  King then volunteered, "I saw it.  I saw it with my own eyes.  He killed Reginald Coley.  That's all I got to say."  The counsel then responded, "And you're upset."  King stated in response, "He killed him.  He killed him."  At that point, the trial judge interfered directing King to wait for a question.  In response, King stated:

> The fact of the matter is you could sit here and try to defend him all you want but he killed Reginald Coley and that's all I got to say.  I saw it with my own eyes. You don't know how it feel[s] to have a loved one snatched from you.  You don't know how it feel[s] to have somebody die in front of your eyes, man.

Cox,  2007 WL 1773188, at *3.

To the extent Petitioner bases his claim on admissibility of King's statement, his position is without merit. "[T]he Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983). The admissibility of evidence is generally a question of state law which is not cognizable under habeas review. See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978).

In cases not governed by the AEDPA, the Third Circuit has held that admission of evidence may violate due process where the evidence is so inflammatory as to "undermine the fundamental fairness of the entire trial." Keller, 251 F. 3d at 413; see also Lesko v. Owens, 881 F. 2d 44, 51 (3d Cir. 1989) ("the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a constitutional violation"). Here, King's testimony, while emotional, could not qualify as so inflammatory to implicate a constitutional violation. Moreover, since: (a) Petitioner's counsel had and took full advantage of the opportunity to examine King (as to King's hearing but not actually seeing the shots) and conveyed Petitioner's position to the jurors; and (b) King's identification of Petitioner and King's unambiguous position that Petitioner killed Coley were fully presented to the jurors during other parts of King's testimony, it would be futile for Petitioner's counsel to move to strike the testimony. Derivatively, Petitioner's counsel's election not to make such a motion did not violate either prong of Strickland, and Petitioner's challenge merits no habeas relief.[18]

_____

[18] Petitioner also asserts that his counsel violated Petitioner's rights by pursuing his line of questions while King was so emotional. See Docket Entry No. 1, at 37 (questioning "defense counsel's decision to continue engaging King in questioning [which indicated that the] counsel

Being construed as an attack on the counsel's election to omit seeking curative instructions, Petitioner's claim fares no better.  A jury instruction (or lack of one) does not merit federal habeas relief even if the instruction, as given, is inconsistent with state law.  A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997); cf. Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ("An omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law").

> [T]he only question for [federal courts sitting in habeas review] is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an [arguably] ambiguous instruction . . . , [federal courts] inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that [federal courts] "have defined the category of infractions that violate 'fundamental fairness' very narrowly."

Estelle v. McGuire, 502 U.S. at 72-73.

Since, here, the trial court provided the jurors with a very careful, well-detailed set of instructions, a separate instruction as to King's emotional outburst would have been futile.  Therefore, it was a valid strategic choice on the part of Petitioner's counsel to limit his objections

---

had chosen to continue the dialogue with the emotional witness and complained only when he did not get the better of the exchange").  However, a strategic decision by counsel does not violate the first prong of Strickland if the strategy proves to be less successful or advantageous than hoped.  See Thomas, 428 F. 3d at 49; see also, Strickland, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy").

to the initial request for mistrial, and Petitioner's counsel's election not to seek limiting or curative instructions neither prejudiced Petitioner not resulted in denial of fundamental fairness. Thus, this sub-sub-ground of Petitioner's sub-ground six of Ground Two warrants no relief.[19]

The foregoing line of Grounds, sub-grounds and sub-sub-grounds composing Ground Two is followed by another constellation of claims, some of which were left without numerations and others recited the already raised sub-grounds and sub-sub-grounds. See Docket Entry No. 1, at 31-41. Upon careful examination of these tailgate claims, the Court distilled two additional challenges (namely, that the state court erred by resolving Petitioner's PCR claims without an evidentiary hearing and that Petitioner's PCR counsel was ineffective), and two vaguely articulated challenges somewhat scattered among the last six pages of Ground Two, i.e., that Petitioner might be entitled to habeas relief in light of the alleged cumulative errors of his counsel and that certain claims Petitioner would have wished to litigate were not raised during his appeals. See id. None of these challenges, however, merits habeas relief.

While "[i]ndividual errors that do not entitle a petitioner to relief may do so when combined," Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008), the test for a cumulative error claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Hein v. Sullivan, 601 F.3d 897, 917 (9th Cir. 2010) (relying on Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); Thornburg v. Mullin, 422 F.3d 1113, 1137 (10th Cir. 2005) (relying on Donnelly, 416 U.S. at 643). Here, Petitioner failed to assert an

---

[19] King's emotion-free statements detailing what he witnessed and identifying Petitioner conveyed every bit of the information, and more, in comparison to the information provided by King during his brief emotional outburst. See Docket Entries Nos. 19-8, at 15-42.

error of constitutional magnitude. Likewise, there is no basis or merit for habeas relief on the grounds of an alleged accumulation of the errors that, in reality, did not exist.

Moreover, Petitioner's references to the PCR court's election to resolve his challenges without an evidentiary hearing, as well as his attack on the performance of his PCR counsel, do not offer a viable basis for habeas relief. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); see also Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) (holding that there is no constitutional right to counsel in state post-conviction relief proceedings and, consequently, that ineffective assistance of counsel in state post-conviction relief proceedings does not provide a ground for federal habeas relief); Taylor v. Horn, 504 F.3d 416, 437 n.17 (3d Cir. 2007) (same, relying on Coleman).[20]

Analogously, infirmities in a state PCR proceeding generally do not raise constitutional questions in a federal habeas action. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) ("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). Since errors in Petitioner's state PCR proceedings, even if presumed present, were collateral to his conviction and sentence, they could not give rise to a claim for federal habeas relief. See id. at 954; see also 28 U.S.C. § 2254(i) (the "ineffectiveness or incompleteness of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"). Thus, Petitioner's challenges based on the

---

[20] In Martinez v. Ryan, 132 S. Ct. 1309 (2012), the Supreme Court limited Coleman by holding that ineffective assistance of counsel in an initial-review collateral proceeding may establish "cause" for a procedural default in a federal habeas proceeding as to that claim, only. Id. at 1315. The Martinez rule does not extend to issues outside procedural default.

lack of evidentiary hearing during his PCR proceedings or on the performance of his PCR counsel merit no habeas relief.

Finally, to the extent Petitioner wished to challenge the performance of his direct appellate counsel, that claim is too without merit, since the counsel's election to exclude certain claims Petitioner wished to raise could not have given rise to a claim of constitutional magnitude in light of the appellate counsel's many well-detailed challenges which, the Court notes in passing, Petitioner incorporated, often verbatim, in his Petition at bar. See Jones, 463 U.S. at 750; accord Cox, 2007 WL 1773188, at *1 (listing Petitioner's multiple represented claims).

### C. Ground Three

Petitioner's Ground Three consists of six different claims. See Docket Entry No. 1, at 45. First, Petitioner reasserted his claim based on denial of the motion for mistrial which Petitioner's counsel made after King's emotional outburst, although – this time – Petitioner attacked the court's decision to deny that motion rather than his counsel's performance. See id.

As already detailed supra, a mistrial is unwarranted where "no remark or argument by the government . . . so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." Moore, 255 F.3d at 105. Here, King's duly admitted testimony provided on direct and cross examinations was far more detailed and condemning to Petitioner's interests than the brief outburst at issue. Therefore, the outburst could not have "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process" to Petitioner. Correspondingly, this sub-ground of Ground Three warrants no habeas relief.[21]

_____

[21] Same applies to Petitioner's assertion that his trial court erred in allowing the outburst being read, as part of the record, to the jurors without a curative instruction. A record conveys no emotions, and the content of King's outburst pales in comparison with King's damning testimony

Next, Petitioner maintains that the "trial court violated [his rights] when it denied [Petitioner's] motion for a mistrial after a police officer . . . volunteered information connecting [Petitioner] with other criminal conduct." Docket Entry No. 1, at 45. However, Petitioner's position is factually incorrect. Officer Khalil Munem, a local parolman, testified during Petitioner's trial about the steps he took to locate Petitioner after Coley's murder. See Cox, 2007 WL 1773188, at *4. Being asked if he was familiar with Petitioner at that time, Office Munem stated only, "I knew him." Id. It is on the basis of these three words, which by no means indicated how Officer Munem knew Petitioner and whether he was familiar with Petitioner's criminal history, Petitioner's counsel moved for mistrial and had his application denied. See id. ("Police who are assigned to areas come to know just about everyone in that area who frequent that area. So [Officer] Munem could probably say that about everyone on the block or almost everyone on the block"). However, out of an abundance of caution, the trial judge gave the jurors curative instructions. See id. (replicating the instructions guiding the jurors as follows: "In the course of [Officer] Munem's testimony he indicated that he knew [Petitioner], knew who the [Petitioner] was. . . . You shouldn't draw any adverse inference from that. . . . [T]he fact [is] that a police officer [usually] knows who people are that frequent an area that he's assigned to").

Petitioner's sub-ground two of Ground Three is based on denial of a motion for mistrial based on Officer Munem's three words "I knew him." However, these three words did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process" to Petitioner. Thus, this sub-ground warrants no habeas relief. See Moore, 255 F.3d at 105.

---

provided on direct and cross examinations. Thus, instructing the jurors to ignore King's outburst would have been futile since the other record provided the jurors with the same facts and more.

Petitioner's third sub-ground of Ground Three reverts to the issue of the trial court's allowance to introduce into evidence the 9mm ammunition clip found on Petitioner's person. As the Court already explained supra, "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," Marshall, 459 U.S.at 438 n.6 (1983), and the admissibility of evidence is, generally, a question not cognizable in federal habeas review. See Keller, 251 F.3d at416 n.2; Hickey, 571 F.2d at 766.

Thus, the due process inquiry is limited to the question of whether the state court's ruling was so arbitrary or prejudicial that it rendered the trial fundamentally unfair. See Romano v. Oklahoma, 512 U.S. 1, 12-13 (1994); Keller, 251 F.3d at 413. The United States Supreme Court has "defined the category of infractions that violate [this] 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990). Here, Petitioner's displeasure with the trial court's ruling admitting the ammunition clip into evidence does not state a viable claim, and no statement in the record suggests that the state court's ruling was so arbitrary or prejudicial that it rendered the trial fundamentally unfair. Hence, this third sub-ground too warrants no relief.

Petitioner's fourth and fifth sub-grounds of Ground Three assert that his rights were violated when the trial court allowed admission of hearsay statements under the excited utterance exception.[22] See Docket Entry No. 1, at 45. However, as already explained, a state evidentiary

---

[22] One such utterance was made by Naheem, the 15-year-old boy who, being agitated by the shooting and seeing Coley's bleeding body, described Coley's shooter as an "old black man"; his utterance was testified to by his mother, Theresa Perry. The other excited utterance was made by King, the witness who, inter alia, saw Petitioner raise his arm toward Coley, heard three shots right thereafter, witnessed Coley bleed and, upon police arrival, identified Petitioner as the shooter. Specifically, King approached Officer Rodriguez less than a minute after said arrival and, being in an "agitated state," stated in "elevated voice, 'I know who did it. It was Mojigg." Cox, 2007 WL 1773188, at *5. Officer Rodriguez testified to that development.

question that is not appropriate for this Court to review in these federal habeas proceedings.  See

Wilson v. Vaughn, 533 F.3d 208, 213 (3d Cir. 2008) ("Admissibility of evidence is a state law

issue") (citing Estelle, 502 U.S. at 72).  Moreover, neither Naheem's utterance (testified to by his

mother) nor King's utterance (testified to by Officer Rodriguez) injected fundamental unfairness

into Petitioner's trial.  Indeed, Petitioner's counsel had – and took advantage – an ample

opportunity to cross-examine King and Naheem's mother, thus allowing the jurors independent

assessment of credibility of these two utterances.[23]

Petitioner's final, that is, sixth sub-ground of Ground Three asserts that Petitioner's rights

were violated when the prosecutor "allud[ed] to his failure to testify."  Docket Entry No. 1, at 45.

The record, however, does not indicate any reference, moreover an inappropriate reference, by

the prosecutor to Petitioner's election to not testify.  See Docket Entry No. 19-13, at 40-94. In

fact, Petitioner himself conceded that no such statement was made; rather, Petitioner self-

servingly "inferred" such implication from the totality of the prosecutor's summation.  See

Docket Entry No. 19-22, at 34 ("in the prosecutor's closing statement[,] he repeatedly posed

rhetorical questions [about the evidence proffered during the trial], and wondered aloud if the

_____

[23]  To determine if the evidence caused fundamental unfairness, the Court must apply the harmless error test.  See Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994).  Under this test, an error, if presumed, is deemed harmless if it did not have "a substantial and injurious effect or influence in determining the jury's verdict."  Id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 n.9 (1993)). Notably, even shocking evidence does not meet this standard because, if the evidence is probative, the admission of such evidence is not so egregious that it violates due process.  See Estelle, 502 U.S. 62 (a state court's admission of testimony of two physicians that the child had suffered systemic and violent child abuse did not violate due process in the context of a petitioner's trial for murder of his infant daughter). Correspondingly, even if this Court were to hypothesize that Petitioner's trial court erred in admitting Naheem's and King's out-of-court statements, those errors were harmless, since the totality of evidence professed at trial was such that these two utterance did not have "a substantial and injurious effect . . . in determining the jury's verdict."  Kontakis, 19 F.3d at 120.

24

record contained any other plausible explanation for the evidence other than [Petitioner's] guilt. It is abundantly clear [to Petitioner that] this was an attempt to infer [Petitioner's] failure to come forward and testify to the contrary should be used to convict him"). Since Petitioner's position is based not on facts but on his self-serving deducements, it fails to raise a cognizable habeas claim. Therefore, this sub-ground also warrants no relief.

The Court has diligently examined all of Petitioner's challenges raised in his Grounds, sub-grounds and sub-sub-grounds, but none of Petitioner's challenges warrants habeas relief. For these reasons, Petitioner's Section 2254 application will be dismissed in its entirety.

## IV.  CERTIFICATE OF APPEALABILITY

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2). <u>See Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

## V.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).  An appropriate Order follows.

s/ Faith S. Hochberg
**Faith S. Hochberg,**
**United States District Judge**

Dated: November 13, 2013

25